IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 17-00181** |
| **JAIROL FRANCISCO** | : | |

<u>**GUILTY PLEA MEMORANDUM**</u>

**I.     <u>INTRODUCTION</u>**

On April 6, 2017, a federal grand jury charged defendant Jairol Francisco with illegal re-entry, in violation of 8 U.S.C. § 1326(a) and (b)(2), all arising from defendant's re-entry into the United States without prior authorization from the Secretary of Homeland Security after having been deported on February 17, 2010 following his guilty plea to Theft and Conversion of United States Treasury Checks, in violation of 18 U.S.C. §§ 641 and 2, which caused a loss to the government of $89,753.54.  The defendant is pleading guilty to Count One of the indictment pursuant to a plea agreement.   The change of plea hearing is scheduled for Thursday, May 11, 2017 at 11:00 AM.

## II. ELEMENTS OF THE OFFENSE

To establish the offense of illegal re-entry in violation of 8 U.S.C. § 1326(a), the government must prove the following facts beyond a reasonable doubt that:

**First**: That the defendant is an alien;

**Second**: The defendant was deported;

**Third**: The defendant thereafter entered, attempted to enter, or was found in the United States; and

**Fourth**: The defendant did so without having obtained permission from the Attorney General (or his successor, the Secretary for the Department of Homeland Security) to reapply for admission.

In addition, in order to apply the sentencing enhancement set forth in 8 U.S.C. § 1326(b)(2), the government must establish at sentencing by a preponderance of the evidence that defendant's prior deportation had occurred after conviction for the commission of an aggravated felony.

## III. MAXIMUM PENALTY

The maximum penalty for violation of 8 U.S.C. § 1326(a) and (b)(2) is twenty years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.

## IV. PLEA AGREEMENT

The full terms of the plea agreement are contained within the plea agreement itself, a copy of which has been provided to the Court. The original will be signed on the morning of the plea hearing.

The terms of the plea agreement are as follows:

1) The defendant agrees to plead guilty to Count One of the Indictment charging him with illegal reentry, in violation of 8 U.S.C. §§ 1326(a) and (b)(2), all arising from defendant's re-entry into the United States without prior authorization from the Secretary of Homeland Security after having been deported on February 17, 2010 following his guilty plea to Theft and Conversion of United States Treasury Checks, in violation of 18 U.S.C. §§ 641 and 2, which caused a loss to the government of $89,753.54. The defendant further acknowledges his waiver of rights, as set forth in the attachment to this agreement.

2) At the time of sentencing, the government will:

a) Make whatever sentencing recommendation as to imprisonment, fines, forfeiture, restitution, and other matters which the government deems appropriate.

b) Comment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the character and any criminal conduct of the defendant; address the Court regarding the nature and seriousness of the offense; respond factually to questions raised by the Court; correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by or on behalf of the defendant at sentencing.

c) Nothing in this agreement shall limit the government in its comments in, and responses to, any post-sentencing matters.

3) The defendant understands, agrees, and has had explained to him by counsel that the Court may impose the following statutory maximum sentence on Count One (illegal reentry):

3

twenty years' imprisonment, a three year period of supervised release, a $250,000 fine, and a $100 special assessment.

Total Maximum Sentence is: twenty years' imprisonment, a three year period of supervised release, a $250,000 fine, and a $100 special assessment.  Defendant may also be deported from the United States, as described more fully below in paragraph 9, which is incorporated by reference herein.

4) The defendant further understands that supervised release may be revoked if its terms and conditions are violated.  When supervised release is revoked, the original term of imprisonment may be increased by up to 2 years per count of conviction.  Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

5) In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.  Accordingly:

   a. The defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs.  The defendant promises that his financial statement and disclosures will be complete, accurate, and truthful.

   b. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6) The defendant agrees to pay the special victims/witness assessment in the amount of $100 before the time of sentencing and shall provide a receipt from the Clerk to the government before sentencing as proof of this payment.

7) The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose.

1. Pursuant to USSG § 6B1.4, the parties enter into the following stipulations under the Sentencing Guidelines Manual. It is understood and agreed that: (1) these stipulations are not binding upon either the Probation Office or the Court; (2) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed; and (3) the disposition contemplated by this plea agreement is pursuant to an early disposition ("Fast-Track") program authorized by the Attorney General of the United States and the United States Attorney for the Eastern District of Pennsylvania.

   a. The parties agree and stipulate that pursuant to USSG § 2L1.2(a) the defendant's base offense level is 8.

   b. The parties agree and stipulate that pursuant to USSG § 2L1.2(b)(2)(C) the defendant's base offense level is enhanced by six levels because he has a prior aggravated felony conviction.

   c. The parties agree and stipulate that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3E1.1(a).

5

    d. The parties agree and stipulate that pursuant to the authorized Early Disposition Program in this district, the defendant is eligible for a 2-level downward departure.

    e. The parties have no agreement as to the defendant's criminal history category. However, this agreement is conditioned on the defendant having less than 13 criminal history points. If the defendant has 13 or more criminal history points, or if the government discovers a conviction other than those disclosed to the defense prior to sentencing, the government shall have the right to withdraw from this agreement.

    f. The defendant understands and agrees that this guilty plea agreement contains all of the terms, conditions, and stipulations regarding sentencing. If the defendant requests (i) any downward departure or variance other than credit for time served in immigration custody following his arrest on March 9, 2017; or (ii) any other reduction or adjustment of sentence not specifically agreed to in writing by the parties, the government may withdraw from the plea agreement.

  2. The defendant, who is not a citizen of the United States, understands that his guilty plea in this case will result in his being subject to immigration proceedings, and will likely result in him being removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the immigration consequences of his guilty plea. The defendant understands that the immigration consequences of this plea will be determined in a separate proceeding before the immigration authorities, and that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences of his plea, even if the result is his removal

6

from the United States. Therefore, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

       3.      If the defendant commits any federal, state, or local crime between the date of this agreement and his sentencing, or otherwise violates any other provision of this agreement, the government may declare a breach of the agreement, and may at its option: (a) prosecute the defendant for any federal crime including, but not limited to, perjury, obstruction of justice, and the substantive offenses arising from this investigation, based on and using any information provided by the defendant during the investigation and prosecution of the criminal case; (b) upon government motion, reinstate and try the defendant on any counts which were to be, or which had been, dismissed on the basis of this agreement; (c) be relieved of any obligations under this agreement regarding recommendations as to sentence; and (d) be relieved of any stipulations under the Sentencing Guidelines. Moreover, the defendant's previously entered guilty plea will stand and cannot be withdrawn by him. The decision shall be in the sole discretion of the government both whether to declare a breach, and regarding the remedy or remedies to seek. The defendant understands and agrees that the fact that the government has not asserted a breach of this agreement or enforced a remedy under this agreement will not bar the government from raising that breach or enforcing a remedy at a later time.

       4.      In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution,

whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

      a.    Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

      b.    If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:

      (1)    that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph three above;

      (2)    challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;

      (3)    challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court;

      (4)    that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.

If the defendant does appeal or seek collateral relief pursuant to this subparagraph, no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph.

    8)    The defendant acknowledges that filing an appeal or any collateral attack waived in the preceding paragraph may constitute a breach of this plea agreement. The government promises that it will not declare a breach of the plea agreement on this basis based on the mere filing of a notice of appeal, but may do so only after the defendant or his counsel thereafter

8

states, either orally or in writing, a determination to proceed with an appeal or collateral attack raising an issue the government deems barred by the waiver. The parties acknowledge that the filing and pursuit of an appeal constitutes a breach only if a court determines that the appeal does not present an issue that a judge may reasonably conclude is permitted by an exception to the waiver stated in the preceding paragraph or constitutes a "miscarriage of justice" as that term is defined in applicable law.

9) The defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

10) The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

11) The defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty.

12) It is agreed that the parties' guilty plea agreement contains no additional promises, agreements, or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements, or understandings will be entered into unless in writing and signed by all parties.

9

## V.   FACTUAL BASIS FOR PLEA

If this case were to proceed to trial, the government would be able to prove each element of the charged offense. In summary, the government would prove the following facts:

1.   **Proof of Deporation**: Defendant was deported from the United States on or about February 17, 2010. An immigration official witnessed the deportation/removal of the defendant and completed an I-205, Warrant of Deportation/Removal, in connection with the removal. The I-205 contains the defendant's name, alien number, photograph, fingerprint and signature.

2.   **Proof of Illegal Re-entry**: Defendant is present in the United States. He was subject to a traffic stop in Berks County, Pennsylvania on or about March 9, 2017. After authorities identified defendant as an illegal alien, he was taken into custody and remains in the custody of federal authorities.

3.   **Proof of No Consent to Re-enter**: United States Citizen and Immigration Services ("USCIS") has no record of any application for permission for him to re-enter the United States. Additionally, the government would produce a Certification of Non-Existence of Record, which would reflect that no record exists of an application by the defendant for permission from the Secretary of Homeland Security to reenter the United States, has been obtained by USCIS.

4.   **Proof of Identity**: According to the Fingerprint Specialist from the Federal Bureau of Investigation, the fingerprint taken from the defendant by ICE officials subsequent to his most recent arrest matches the fingerprint on the I-205 from his prior removal. Therefore, defendant is Jairol Francisco.

10

5.  **Proof of Alienage**: The government would produce defendant's alien file—a record kept by United States Immigration Authorities—which lacks any suggestion that defendant had ever become a United States citizen.

6.  **Proof of Aggravated Felony**: The government would prove at sentencing, by a preponderance of the evidence, that prior to his February 17, 2010 deportation, defendant was convicted of Theft and Conversion of United States Treasury checks, in violation of 18 U.S.C. §§ 641 and 2, which resulted in loss to the United States government of approximately $89,753.54.

## VI. CONCLUSION

The United States respectfully submits that this summary of evidence provides a factual basis for a guilty plea by the defendant to Count One of the Indictment charging him with illegal re-entry in violation of 8 U.S.C. §§ 1326(a) and (b)(2).

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney

/s/ Christopher J. Mannion
CHRISTOPHER J. MANNION
Assistant United States Attorney

Dated: May 4, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Guilty Plea Memorandum has been served by ECF or electronic mail upon the following:

>Maria A. Pedraza
>Assistant Federal Defender
>Federal Community Defender Office for
>The Eastern District of Pennsylvania
>The Curtis Center - Suite 540 West
>601 Walnut Street
>Philadelphia, PA 19106
>E-mail: maria_pedraza@fd.org

>/s/ Christopher J. Mannion
>CHRISTOPHER J. MANNION
>Assistant United States Attorney

Dated: May 4, 2017